# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

In re:

John Owen Murrin, III,                                    Bankruptcy No. 09-38182

Debtor.

John O. Murrin, III,

        Appellant,

v.                                                        Civil No. 12-987 (JNE)
                                                          ORDER

Terri Hanson, Colleen Turgeon, Glen
Smogoleski, Toni Klatt, Peder K.
Davisson, Dennis L. Desender,
Davisson & Associates, P.A., and
Edina Realty, Inc.,

        Appellees,

and

Randall L. Seaver,

        Trustee/Appellee.

John Murrin appeals three final orders of the United States Bankruptcy Court for the District of Minnesota. Trustee Randall Seaver opposes the appeal separately, and the other Appellees join together in opposition. For the reasons set forth below, the Court affirms the orders denying relief from the bankruptcy stay, and reverses and remands the decision of the bankruptcy court that granted Chapter 7 bankruptcy relief.

# I.    BACKGROUND

In August 2004, John Murrin and his wife, Devonna Murrin, invested $600,000 in Avidigm Capital Group, Inc. in exchange for a promissory note. Avidigm was a vehicle for real estate speculation dealing in distressed properties. Avidigm ceased operations and the Murrins brought suit in Hennepin County District Court against Avidigm and 45 other named defendants. The Murrins reached settlement agreements with several of the defendants totaling $707,000— an amount greater than their initial investment in Avidigm. They continued to pursue their suits against the remaining defendants. John Murrin represented himself in these lawsuits, and DeVonna Murrin was represented by an attorney, Christopher LaNave. Among the remaining defendants were the Appellees for the bankruptcy appeal now before the Court.

The remaining defendants in the state court litigation had only tangential connections to Avidigm or were employed in a clerical capacity by the company. Ultimately, the Hennepin County District Court terminated the Murrins' lawsuit as to all the remaining defendants in a June 13, 2008 order that was adverse to the Murrins. The Murrins unsuccessfully appealed, and the Minnesota Court of Appeals later granted costs and disbursements to the appellees and against the Murrins.

After the dispositive rulings of the state trial court, several of the defendants made motions for imposition of sanctions on the Murrins and LaNave. The trial court granted these motions. In an order dated December 8, 2008, the trial court awarded attorney fees and costs to each movant and entered judgment jointly and severally against the Murrins and LaNave for a total of $432,966.38 in attorney fees and $32,484.86 in costs and disbursements. LaNave settled with the defendants for an undisclosed amount. Later, the Murrins were adjudicated in contempt in connection with the post-judgment collection of the sanctions judgment. The Murrins

appealed the contempt adjudications as well as the awards of fees and costs. These issues were consolidated on appeal to the Minnesota Court of Appeals.

While that appeal was pending, four of the awardees of attorney fees and costs joined together (several other state court defendants joined later) and filed involuntary bankruptcy petitions against the Murrins under 11 U.S.C. § 303. The bankruptcy court questioned the filing of involuntary bankruptcy while the Murrins' appeal was pending in state court. The petitioners explained that an investigation revealed that John Murrin transferred $385,000 to his 83-year-old mother in late 2008. The petitioners argued that the involuntary petition could not be delayed without risking further asset transfers to insiders. The Murrins responded with a motion to dismiss the involuntary bankruptcy petition. At a hearing on the Murrins' motion, the parties stipulated to a grant of relief from the automatic bankruptcy stay to allow the proceedings in the Minnesota Court of Appeals to go forward. The parties agreed to delay the bankruptcy proceedings until the Minnesota Court of Appeals ruled on the Murrins' appeal.

The Minnesota Court of Appeals affirmed the Hennepin County District Court as to the imposition of sanctions and findings of contempt as to John Murrin but reversed as to DeVonna Murrin. *Murrin v. Mosher*, Nos. A09-314, A09-315, A09-816, A09-1400, 2010 WL 1029306 (Minn. Ct. App. Mar. 23, 2010), *rev. denied* (Aug. 10, 2010). The Minnesota Supreme Court denied a petition for review. The bankruptcy court combined the proceedings on the Murrins' motion to dismiss with the proceedings on the involuntary bankruptcy petition itself. The bankruptcy court conducted an evidentiary hearing and issued an order dated January 4, 2012 resolving the three issues raised by the Murrins. First, the bankruptcy court determined that the petitioning creditors had standing to seek bankruptcy relief under 11 U.S.C. § 303(b)(1) (2006). Second, it found that the Murrins were generally not paying their debts, which established a basis

for Chapter 7 bankruptcy relief under 11 U.S.C. § 303(h)(1). Third, the bankruptcy court concluded that venue was proper in Minnesota under 28 U.S.C. § 1408.

John Murrin now appeals all aspects of the bankruptcy court's January 4, 2012 order as well as orders issued on November 18, 2010[1] (denying the Murrins' Motion for Relief from Stay) and February 9, 2012 (denying the Murrins' Motions for Relief from Orders for Relief under Chapter 7 and for Relief from Stay).

## II.    DISCUSSION

This Court sits in review of bankruptcy court decisions pursuant to 28 U.S.C. § 158(a) (2006). The Court reviews the bankruptcy court's conclusions of law de novo and its factual findings for clear error. *Dapec, Inc. v. Small Bus. Admin. (In re MBA Poultry, LLC)*, 291 F.3d 528, 533 (8th Cir. 2002).

### A.  Jurisdictional challenge

Murrin argues that the bankruptcy court's Orders denying Murrin's request to lift the automatic bankruptcy stay and its Order granting relief under Chapter 7 were barred by the *Rooker-Feldman* doctrine. That doctrine generally provides that lower federal courts—including bankruptcy courts—do not have jurisdiction over appeals from a state court judgment. *See Friends of Lake View Sch. Dist. v. Beebe*, 578 F.3d 753, 758 (8th Cir. 2009). The *Rooker-Feldman* doctrine is a narrow doctrine "confined to cases . . . brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced." *Dodson v. Univ. of Ark. for Med. Scis.*, 601 F.3d 750, 754 (8th Cir. 2010) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).

---

[1]      Murrin's Notice of Appeal states that he appeals from the "Order denying Debtor's Motion for Relief from Stay dated the 18th of November, 2011." There is no order from the bankruptcy court with that date. The Court proceeds under the assumption that Murrin intended to appeal the order with the same name dated November 18, 2010.

The involuntary bankruptcy petition at issue here was brought by the state court winners and does not challenge—but instead seeks to enforce—the state court judgment for sanctions against Murrin. The involuntary bankruptcy petition more likely furthers the state court's purpose by ensuring Murrin fulfills his financial obligation imposed by that court's judgment. This case does not fit into the scope of *Rooker-Feldman* doctrine, and the Court has subject matter jurisdiction.[2]

### B.  Statutory requirements for involuntary bankruptcy under 11 U.S.C. § 303

Involuntary bankruptcy provides a method for creditors to force a debtor into bankruptcy proceedings if certain statutory criteria are met. Involuntary bankruptcy petitions are rare compared to voluntary ones in part due to the statutory burdens placed on petitioning creditors. 2-303 *Collier on Bankruptcy* § 303.01 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2009). These strict requirements are intended to prevent fraudulent involuntary filings against individuals. *Id.* § 303.LH. "[T]he filing of an involuntary petition is an extreme remedy with serious consequences to the alleged debtor, such as loss of credit standing, inability to transfer assets and carry on business affairs, and public embarrassment." *In re Reid*, 773 F.2d 945, 946 (7th Cir. 1985). Involuntary bankruptcy is intended to be exercised for the good of the entire creditor body. *In re Tichy Elec. Co.*, 332 B.R. 364, 376 (Bankr. N.D. Iowa 2005). "It is not

---

[2]       Although the Court finds that *Rooker-Feldman* doctrine does not apply in this case, it notes that the record is unclear as to the status of the state court litigation. For example, a March 6, 2009 Order finding Murrin in constructive civil contempt of court required him to serve 90 days imprisonment if he did not comply with the Order. Upon Murrin's failure to comply, a bench warrant was issued on March 13, 2009. That warrant apparently expired without an arrest. The Hennepin County District Court issued a second contempt order on April 24, 2009. The contempt orders were affirmed, as to John Murrin, by the Minnesota Court of Appeals. *Murrin*, 2010 WL 1029306, at *16. It is unclear whether the Hennepin County District Court is satisfied with Murrin's compliance with its contempt orders.

intended to be used in an exclusively self-serving manner as a collection device." *Id.* Section 303

sets out the requirements for involuntary bankruptcy:

> **(b)** An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—
> **(1)** by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount, . . .
>
> **(h)** . . . after trial, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed, only if—
> **(1)** the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute as to liability or amount; . . .

11 U.S.C . § 303(a), (h). The petitioning creditors bear the burden of proving that the debtor is

generally not paying debts as they become due and that their claims are not subject to a bona fide

dispute. *See Rimell v. Mark Twain Bank (In re Rimell)*, 946 F.2d 1363, 1365 (8th Cir. 1991); *In

re Saunders*, 379 B.R. 847, 854 (Bankr. D. Minn. 2007). Murrin argues that the petitioning

creditors cannot satisfy several of the necessary requirements for involuntary bankruptcy.

### 1.   Three or more creditors requirement

Section 303(b)(1) of the Bankruptcy Code allows for the filing of an involuntary

bankruptcy petition against a debtor if commenced "by three or more entities, each of which is

. . . a holder of a claim against such [debtor]." 11 U.S.C. § 303(b)(1). A "claim" is defined as a

"right to payment, whether or not such a right is reduced to a judgment." 11 U.S.C. § 101(5)(A).

Where creditors are owed separate and distinct payments, and the creditors merely enforce their

rights to payment with a joint judgment, courts have found the creditors to be holders of distinct

claims. *See, e.g.*, *Tichy Elec.*, 332 B.R. at 372, 373, 375; *In re Mid-America Indus., Inc.*, 236

B.R. 640, 645 (Bankr. N.D. Ill. 1999); *In re Richard A. Turner Co.*, 209 B.R. 177, 179 (Bankr. D. Mass. 1997).  But where there are joint holders of an obligation or where the separate obligations due to multiple payees are articulated only as one lump sum, courts have consistently held that the individuals hold only one claim between them.  *See, e.g.*, *Huszti v. Huszti*, 451 B.R. 717, 721 (E.D. Mich. 2011); *Sipple v. Atwood (In re Atwood)*, 124 B.R. 402, 409 (S.D. Ga. 1991); *In re T.P. Herndon and Co.*, 87 B.R. 204, 205 (Bankr. M.D. Fla. 1988).

Here, the involuntary bankruptcy petition was commenced by three distinct creditors, (Terri Hanson, Colleen Turgeon, and Glenn Smogoleski). Despite the debt arising from one judgment, the amount owed to each debtor was specified.  *See Murrin*, 2010 WL 1029306, at *2 ("The judgments totaled $431,023.35: $136,767.60 in favor of the Smogoleski respondents; $103,352.50 in favor of the Davisson/DeSender respondents; $37,100 in favor of Hanson; $12,958.75 in favor of Klatt; $65,844.50 in favor of Turgeon; and $75,000 in favor of Edina Realty."). Because these creditors hold distinct claims, the "three creditor" requirement of 11 U.S.C. § 303(b)(1) is satisfied.

## 2.  Generally not paying debts

In a controverted involuntary bankruptcy case, the petitioning creditors must prove that "the debtor is generally not paying such debtor's debts as such debts become due." 11 U.S.C. § 303(h)(1). Like the three creditor requirement, the "generally not paying" requirement helps to further the purpose of involuntary bankruptcy by "protect[ing] the interests and desires of the creditors as a whole." *Crum & Forster Managers Corp. of New York v. Basin Elec. Power Coop.*, 911 F.2d 155, 156 (8th Cir. 1990). Involuntary bankruptcy is not to be used "as a forum for the trial and collection of an isolated disputed claim, a practice condemned in prior decisions." *Saunders*, 379 B.R. at 857 (citing *In re Nordbrock*, 772 F.2d 397 (8th Cir. 1985)).

Whether a debtor is generally paying his debts as they came due is a question of fact reviewed for clear error. *See Liberty Tool, & Mfg. v. Vortex Fishing Sys., Inc. (In re Vortex Fishing Sys., Inc.)*, 277 F.3d 1057, 1072 (9th Cir. 2002); *Concrete Pumping Serv., Inc. v. King Constr. Co. (In re Concrete Pumping Serv., Inc.)*, 943 F.2d 627, 630 (6th Cir. 1991); *Soc'y of Lloyd's v. Harmsen (In re Harmsen)*, 320 B.R. 188, 201 (B.A.P. 10th Cir. 2005). Murrin argues he was generally paying his debts because he was current on all debts other than those due to the petitioning creditors that resulted from the sanctions judgment.

"Generally" is not specifically defined in the Bankruptcy Code. Most courts use a totality of the circumstances test to determine whether a debtor is "generally not paying" his debts.[3] There are no Eighth Circuit cases delineating a test for determining when a debtor is generally not paying debts. Although not precedential, the bankruptcy court cited *In re Feinberg* for the factors to consider. 238 B.R. 781 (B.A.P. 8th Cir. 1999).[4] *Feinberg* tracks the factors considered

---

[3]     *See, e.g.*, *Vortex Fishing*, 277 F.3d at 1072 ("The Ninth Circuit has adopted a "totality of the circumstances" test for determining whether a debtor is generally not paying its debts under 11 U.S.C. § 303(h)."); *Gen. Trading Inc. v. Yale Materials Handling Corp.*, 119 F.3d 1485, 1504 n.41 (11th Cir. 1997) ("In determining whether a debtor is generally paying its debts as they become due, courts compare the number of debts unpaid each month to those paid, the amount of the delinquency, the materiality of the non-payment, and the nature of the [d]ebtor's conduct of its financial affairs." (internal quotation marks omitted)); *Norris v. Johnson (In re Norris)*, No. 96-30146, 1997 WL 256808, at *6 (5th Cir. 1997) ("Numerous factors have been considered by courts in determining whether a debtor is paying his debts as they become due, including: whether the debtor is conducting his financial affairs in a manner inconsistent with good faith and outside the ordinary course of business; the debtor's overall payment activity and payment practices; the amount of the debtor's debts compared to the amount of the debtor's yearly income; and the fact that insiders deferred payment on account of loans payable to them."); *Concrete Pumping Serv.*, 943 F.2d at 630 (describing a totality of the circumstances test and explaining that a court "considers the proportion of the debt being paid-both in terms of the proportion of creditors being paid and the proportion of debt, in dollar value, being paid").

[4]     The Eighth Circuit, on a joint motion of the parties, vacated the Bankruptcy Appellate Panel's judgment and opinion in *Feinberg* and remanded the case with instructions that the Bankruptcy Appellate Panel dismiss the appeal. (Bankruptcy Petition No. 98-53157, ECF No. 26, Jan. 12, 2000).

by other Circuit Courts. *See, e.g.*, *Gen. Trading Inc.*, 119 F.3d at 1504 n.41; *Norris*, 1997 WL 256808, at *6; *Concrete Pumping Serv.*, 943 F.2d at 630. The panel in *Feinberg* noted that there is no set standard for determining whether a debtor is generally paying his debts, but that the following factors have been consistently applied by courts in a totality of the circumstances analysis. *Feinberg*, 238 B.R. at 783.

> (1) the number of unpaid claims;
> (2) the amount of the claims;
> (3) the materiality of nonpayment; and
> (4) the overall conduct of the debtor's financial affairs.

*Id.*; *see also Crown Heights Jewish Cmty. Council v. Fischer (In re Fischer)*, 202 B.R. 341, 350 (E.D.N.Y. 1996) (collecting cases that used the four factor analysis). Some courts have applied a fifty percent standard in analyzing the first two factors, finding that a debtor is generally not paying his debts when the unpaid debts total more than fifty percent of the debtor's total debt. *See In re Amanat*, 321 B.R. 30, 40 (Bankr. S.D.N.Y. 2005); *In re J.B. Lovell Corp.*, 80 B.R. 254, 255 (Bankr. N.D. Ga. 1987); *In re Garland Coal & Min. Co.*, 67 B.R. 514, 522 (Bankr. W.D. Ark. 1986). But at least one court in this district appears to have disclaimed the use of a percentage analysis. *See In re Hill*, 5 B.R. 79, 83 (Bankr. D. Minn. 1980) ("The test is not one of a percentage of amount of debt nor of number of claimants."). Reading a percentage into the meaning of "generally" may be a more rigid test than Congress intended, but it is clear nonetheless that the number and amount of unpaid claims are central to any analysis. *See Report of the Commission on the Bankruptcy Laws of the United States*, H.R. Doc. No. 93-137, pt. 2 at 75, ¶ 5 (1st Sess. 1973) ("[T]he court must find more than prospective inability to pay only a few of the debtor's liabilities when they fall due and more than a past failure to pay only a few of his debts. It is intended that the court consider both number and amount in determining whether the inability or failure is general.").

Here, the bankruptcy court listed all four factors from *Feinberg* but only discussed the third and fourth factors. In *Feinberg*, the panel remanded the case because "the bankruptcy court did not apply the appropriate factors for determination of 'generally not paying.'" *Feinberg*, 238 B.R. at 785. Although the test is one of totality of the circumstances and there is no strict requirement for a court to address each and every factor, most courts addressing this question rely heavily on the number and amount of the unpaid claims and compare those values with the debts the debtor is paying. *See, e.g.*, *In re Green Hills Dev. Co., LLC*, 445 B.R. 647, 660 (Bankr. S.D. Miss. 2011) ("Without proof as to the number of creditors and the amount of the debt owed, the Court cannot conclude that the Alleged Debtor was generally not paying its debts."); *Fischer*, 202 B.R. at 350 (stating that the analysis "requires a careful balancing of both the number and amount of the unpaid debts, in proportional terms, viewed in the light of the alleged debtor's total financial picture"); *In re Reed*, 11 B.R. 755, 760-61 (Bankr. S.D. W. Va. 1981) (conducting a thorough analysis of the number of creditors, amounts owed, and payments made by debtor). The Fifth Circuit addressed a similar situation in *Norris*, 1997 WL 256808. In that case, the debtor was paying all of his debts except those owed to the three creditors petitioning for involuntary bankruptcy. *Id.* at *8. The court compared the aggregate amount owed to the petitioning creditors ($840,000) with the amount owed other creditors ($570,000). *Id.* The court found it significant that the debtor had not made any payments on the debt to the petitioning creditors and noted that the majority of his other debt was owed to family members. *Id.* The court found that the debtor was generally not paying his debts. *Id.* at *7. Without factual findings as to the number and amount of the debts Murrin is paying as compared to those he is not paying, the Court cannot liken this case to prior cases where a debtor was found not to be generally paying his debts. *See* 2-303 *Collier on Bankruptcy* § 303.31 ("The concept of 'generally' is a

comparative one. The question is how many debts are being paid in proportion to the total

number of debts." (footnote omitted)). Further, without findings of fact from the bankruptcy

court regarding these amounts and Murrin's payment or nonpayment of his various creditors, the

Court has no factual findings to review for clear error. *See Vortex Fishing Sys.*, 277 F.3d at 1072.

The Court's own cursory review of the record from the bankruptcy proceedings indicates

that Murrin reported over $1,700,000 in secured debt on his Schedule D. This appears to be far

more than the unpaid unsecured debt of $550,000 due to the petitioning creditors. It is certainly

possible that involuntary bankruptcy is appropriate where the only unpaid debts are those of the

petitioning creditors. But courts that have reached such a conclusion have generally done so

when the unpaid debt or debts constitute the majority of the overall debt. *See, e.g.*, *In re Euro-*

*American Lodging Corp.*, 357 B.R. 700, 713-14 (Bankr. S.D.N.Y. 2007) (holding that where the

unpaid claim represented 90 percent of the total debt and had been in default for 15 years, the

debtor was not generally paying its debts); *In re Am. Cotton Suppliers Int'l, Inc.*, 2002 Bankr.

LEXIS 1972, 67-68 (Bankr. N.D. Tex. Sept. 30, 2002) ("An alleged debtor may not be paying its

debts as they become due, even if the alleged debtor is not paying only one or two creditors,

when those creditors hold the overwhelming majority of debt."); *Fischer*, 202 B.R. at 350-51

("There is substantial authority for the proposition that even though an alleged debtor may owe

only one debt, or very few debts, an order for relief may be granted where such debt or debts are

sufficiently substantial to establish the generality of the alleged debtor's default."); *Hill*, 5 B.R. at

83 (finding the debtors were not generally paying their debts where they failed to pay three large

debts as compared to small monthly consumer debts that they were paying); *see also Vortex*

*Fishing Sys.*, 277 F.3d at 1072 ("A finding that a debtor is generally not paying its debts requires

a more general showing of the debtor's financial condition and debt structure than merely

establishing the existence of a few unpaid debts." (quotation marks omitted)). Here, the

bankruptcy court did not make such a comparison. Involuntary bankruptcy is an extreme remedy

that has a significant detrimental impact on the debtor's credit rating and non-petitioning

creditors. *See Reid*, 773 F.2d at 946. Therefore, it is not appropriate for the Court to affirm that

Murrin was generally not paying his debts without factual findings and comparative analysis on

the total amount and number of claims.

    A portion of the unpaid indebtedness evident from the record is connected to a finding of

contempt, a finding that included the possibility of 90 days in jail. Contempt arising from

nonpayment presupposes that a person has the ability to pay, but is unwilling to pay. An inquiry

into how Murrin's unpaid indebtedness compares to his general indebtedness is especially

relevant here, where the unpaid indebtedness arises in part from a state court finding of

contempt. The factual findings and legal conclusions by the bankruptcy court do not make it

clear whether the petitioning creditors have exhausted state court collection processes. The facts

of this case lead the Court to question whether this involuntary petition is more akin to an

attempt to collect a debt rather than an attempt to further the interests of all Murrin's creditors.

Notably, the petition was filed even before the Minnesota Court of Appeals denied the appeal of

the very order that gave rise to the only unpaid indebtedness. Courts have held that preservation

of assets for routine debt collection is an improper purpose for filing an involuntary bankruptcy

petition. *See, e.g.*, *Atlas Mach. & Iron Works, Inc. v. Bethlehem Steel Corp.*, 986 F.2d 709, 716

n.11 (4th Cir. 1993) ("Debt collection is not a proper purpose of bankruptcy."); *Nordbrock*, 772

F.2d at 400 ("A creditor does not have a special need for bankruptcy relief if it can go to state

court to collect a debt."); *MAG Bus. Servs. v. Whiteside (In re Whiteside)*, 240 B.R. 762, 766

(Bankr. W.D. Mo. 1999) ("[T]he remedy of involuntary bankruptcy was not intended to be a

substitute for ordinary debt collection procedures."); *In re Dino's, Inc.*, 183 B.R. 779, 783-84

(S.D. Ohio 1995) ("It is also obvious that the use of the bankruptcy court as a routine collection

device would quickly paralyze this court." (citation omitted)); *see also Tichy Elec.*, 332 B.R. at

373 ("The filing of an involuntary petition for a non-bankruptcy purpose is evidence of bad

faith." (citing *Basin Elec. Power Coop. v. Midwest Processing Co.*, 769 F.2d 483, 486 (8th Cir.

1985) and *Bock Transp., Inc.*, 327 B.R. 378, 382 (B.A.P. 8th Cir. 2005))). In light of the fact that

Murrin's indebtedness is partly due to his refusal to pay, a comparative analysis is especially

important.

### 3.   Bona fide dispute as to liability or amount

Murrin argues that a bona fide dispute as to liability and amount of the debt exists.

"[C]ourts need not address the complex issue of 'bona fide dispute' if they can determine that the

debtor is generally paying its debts as they became due." 2-303 *Collier on Bankruptcy* § 303.11;

*see also In re Palace Oriental Rugs, Inc.*, 193 B.R. 126, 129 (Bankr. D. Conn. 1996). The Court

declines to address Murrin's argument regarding a bona fide dispute because it finds that the

petitioning creditors have not met their burden of demonstrating that Murrin was generally not

paying his debts as they became due.

### C.   Orders denying relief from the automatic stay

Murrin appeals the November 18, 2010 Order denying relief from the automatic

bankruptcy stay. "A decision to grant or deny a motion for relief from the automatic stay is

within the discretion of the bankruptcy court and as such, is reviewed for an abuse of discretion."

*Wiley v. Hartzler (In re Wiley)*, 288 B.R. 818, 821 (B.A.P. 8th Cir. 2003). Murrin argues that the

bankruptcy court's refusal to lift the stay foreclosed his right to seek a financial hearing on the

13

sanctions order in state court due to a change of circumstances. The bankruptcy court can lift the automatic stay to allow litigation involving the debtor to continue in another forum.

> In making the determination of whether to grant relief from the stay, the court must balance the potential prejudice to the debtor, to the bankruptcy estate, and to the other creditors against the hardship to the moving party if it is not allowed to proceed in state court. The factors used to balance the hardships are: (1) judicial economy; (2) trial readiness; (3) the resolution of preliminary bankruptcy issues; (4) the creditor's chance of success on the merits; (5) the cost of defense or other potential burden to the bankruptcy estate and the impact of the litigation on other creditors.

*Id.* at 822. Murrin characterizes the November 18, 2010 Order as an order "denying Murrin the opportunity to clear sanctions" and argues it was unconstitutional according to *Stern v. Marshall*, 131 S. Ct. 2594 (2011). (Appellant Br. 20-21). *Stern* held that the bankruptcy court "lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim." *Stern*, 131 S. Ct. at 2620. The United States Supreme Court made clear in *Stern* that the decision was narrow. *Id.* The counterclaim at issue in *Stern*, upon which the bankruptcy judge entered a final order, was "in no way derived from or dependent upon bankruptcy law; it [was] a state tort action that exist[ed] without regard to any bankruptcy proceeding." *Stern*, 131 S. Ct. at 2618. The November 18, 2010 Order does not involve a final judgment on a state law counterclaim. The Minnesota Supreme Court had denied review of Murrin's appeal of the state court sanctions three months prior to the bankruptcy court issuing the challenged Order. The November 18, 2010 Order—in response to Murrin's motion to lift the automatic stay—does not rule on Murrin's state law sanctions, but instead was directly pursuant to relief specific to bankruptcy law. The authority to lift the automatic bankruptcy stay is provided in 11 U.S.C. § 362 of the *bankruptcy code* rather than

under state law. The bankruptcy court acted clearly within its authority, and this is not a *Stern* situation.

The Court reviewed the transcript from the hearing on Murrin's motion for relief from the automatic stay for abuse of discretion. The bankruptcy court denied Murrin's request for relief from the stay because it found "no real compelling need to go to [the state court] forum" because Murrin had already received a final order on the sanctions judgment from the Minnesota Court of Appeals and a denial of review from the Minnesota Supreme Court. (Tr. 13:8-17, Nov. 18, 2010, ECF No. 139). The bankruptcy court also noted that its refusal to lift the stay in November, 2010 did not foreclose the possibility of pursuing additional state court actions in the future, after the trial on Chapter 7 bankruptcy. (Tr. 12:17-13:7, Nov. 18, 2010, ECF No. 139). It also considered judicial economy and trial readiness in addition to any prejudice to Murrin. (Tr. 10:22-14:17, Nov. 18, 2010, ECF No. 139). The Court finds that the bankruptcy court did not abuse its discretion in denying Murrin's motion for relief from the automatic stay.

As to the February 9, 2012 Order denying Murrin's motion, the Court need not consider that Order separately because the underlying Order of January 4, 2012 is reversed and remanded.

**D.  Additional arguments**

Murrin also argues that the bankruptcy court's Orders are unconstitutional, that venue is improper, and that the bankruptcy judge impermissibly based some of his findings on his personal recollections of Murrin from another case. The Court need not reach these arguments as it finds that the petitioning creditors have not met their burden of demonstrating that Murrin was generally not paying his debts as they became due.

### III.    CONCLUSION

Based on the files and records herein, and for the reasons stated above, IT IS ORDERED

THAT:

1.  The November 18, 2010 Order of the Bankruptcy Court is **AFFIRMED**.

2.  The January 4, 2012 Order of the Bankruptcy Court is **REVERSED** and
    **REMANDED**.

3.  The Appeal from the February 9, 2012 Order and Appellant's Motion to Strike
    Material from Appellee's Briefs [Docket No. 22] are **DISMISSED** as moot.

LET JUDGMENT BE ENTERED ACCORDINGLY.


Dated:  August 20, 2012

                                        s/ Joan N. Ericksen
                                        JOAN N. ERICKSEN
                                        United States District Judge